1                  UNITED STATES DISTRICT COURT

2                  EASTERN DISTRICT OF LOUISIANA

3

4

UNITED STATES OF AMERICA        *    Docket 11-CR-241
5                               *    Section "I"
                                *
6   versus                      *    New Orleans, Louisiana
                                *
7   BENSON CORIOLANT            *    February 7, 2013
    * * * * * * * * * * * * * * * *

8

9                    SENTENCING PROCEEDINGS BEFORE
                   THE HONORABLE LANCE M. AFRICK
10                  UNITED STATES DISTRICT JUDGE

11

    APPEARANCES:
12

13  For the Government:           U.S. Attorney's Office
                                  BY:  JORDAN GINSBERG, ESQ.
                                  BY:  SEAN M. TOOMEY, ESQ.
14                                BY:  JULIANA A. ETLAND, ESQ.
                                  650 Poydras Street
15                                Suite 1600
                                  New Orleans, Louisiana 70130
16

17  For the Defendant:            Dwight Michael Doskey, Esq
                                  Attorney at Law
18                                321 N. Vermont Street
                                  Suite 209
19                                Covington, Louisiana  70433

20

    Official Court Reporter:      Jodi Simcox, RMR, FCRR
21                                500 Poydras Street
                                  Room HB-406
22                                New Orleans, Louisiana 70130
                                  (504) 589-7780
23

    Proceedings recorded by mechanical stenography, transcript
24  produced by computer.

25

1                          __PROCEEDINGS__

2                        **(February 7, 2013)**

3                             \*\*\*\*\*\*

4          (OPEN COURT)

5          **THE COURT:**  Thank you.  Good afternoon.  Have a seat.

6               Let's call the first case, please.

7          **THE DEPUTY CLERK:**  2011-241, *USA versus Benson*

8  *Coriolant.*  This matter is set for sentencing.

9               Counsel?

10         **MR. DOSKEY:**  Dwight Doskey on behalf of the

11  defendant, Benson Coriolant, who's present in court, Your

12  Honor.

13         **MR. GINSBERG:**  Good afternoon, Your Honor.  Jordan

14  Ginsberg, Juliana Etland and Sean Toomey on behalf of the

15  United States.

16         **THE COURT:**  All right.  Good morning.  Is there any

17  reason why sentencing shouldn't proceed today?

18         **MR. DOSKEY:**  No, Your Honor.

19         **THE COURT:**  Have you and your client had an

20  opportunity to review the presentence report?

21         **MR. DOSKEY:**  Yes, Your Honor.  We reviewed the

22  presentence report and we filed our objections.  And we have

23  had a chance to review the government's sentencing memorandum

24  as well as the addendums to the presentence report.

25         **THE COURT:**  Other than what has been set forth in

1  writing to the Court, are there any other additions,

2  corrections, modifications, deletions or objections that the

3  defendant has?

4          **MR. DOSKEY:**  No, Your Honor.

5          **THE COURT:**  Any by the government?

6          **MR. GINSBERG:**  No, Judge.

7          **THE COURT:**  All right.  I can promise you, you've

8  known me for a long time now, I've read everything numerous

9  times and I've studied this.  If you'd like to make any

10  argument additional to what's on paper, I'll be glad to hear

11  you, but otherwise I'm prepared to rule on the objections.

12          **MR. DOSKEY:**  Your Honor, I think that our argument is

13  sufficiently set forth in the objections.

14          **THE COURT:**  Government?

15          **MR. GINSBERG:**  Your Honor, I'd like to make a

16  statement concerning, not the objections, but -- maybe I should

17  wait until after you rule on the objections before sentencing.

18          **THE COURT:**  Yes.  Well, I'll certainly give you a

19  chance to do that after the defendant has a chance to

20  allocution, and Mr. Doskey, as to sentencing.

21          **MR. GINSBERG:**  All right.

22          **THE COURT:**  Let's begin with defendant's objections.

23              Nos. 1 through 5 has to do with the offense

24  conduct, paragraphs 10 through 37, and the addendum to the

25  presentence report summarizes his five objections.  I agree

1    with Probation and the Government that each of these objections
2    must be overruled.
3              "The sentencing judge is entitled to find by a
4    preponderance of the evidence all the facts relevant to the
5    determination of a guideline sentencing range and all facts
6    relevant to the determination of a non-guideline sentence."
7              That's *United States versus Mares*, M-A-R-E-S,
8    402 F.3d 511, 519 (Fifth Circuit, 2005.)  United States
9    Sentencing Guidelines Section 6A1.3 and commentary.
10             A preponderance of the evidence at trial
11   supports the version of the facts reported in the PSR.  This
12   Court will be guided by the evidence presented at trial when
13   fashioning an appropriate sentence in this case.
14             Defendant's objection No. 6 has to do with the
15   leadership role enhancement, paragraphs 53, 61, 69, 77, 85 and
16   93.  Coriolant objects to the two-level enhancement applied in
17   the PSR for his role as an organizer, leader, manager or
18   supervisor in the offense.  The U.S. Sentencing Guidelines
19   authorize enhancements based on the defendant's role in the
20   offense as follows:
21             A, if the defendant was an organizer or a leader
22   of a criminal activity that involved five or more participants
23   or was otherwise extensive, increase by 4 levels;
24             B, if the defendant was a manager or supervisor,
25   but not an organizer or leader, and the criminal activity

1    involved five or more participants or was otherwise extensive,

2    increase by 3 levels;

3              And, C, if the defendant was an organizer,

4    leader, manager or supervisor in any criminal activity other

5    than described in "A" or "B," increase by 2 levels.

6              That's U.S. Sentencing Guideline Section 3B1.1.

7              The PSR applied the two-level enhancement

8    contemplated in Section 3B1.1(c) on the ground that he was an

9    organizer, leader, manager or supervisor in any criminal

10   activity other than described in "A" or "B."

11             "To qualify for an adjustment under this

12   section, the defendant must have been the organizer, leader,

13   manager or supervisor of one or more other participants."  The

14   same guideline in Comment 2.

15             "A participant is a person who is criminally

16   responsible for the commission of the offense, but need not

17   have been convicted.  A person who is not criminally

18   responsible for the commission of the offense is not a

19   participant."  The same guideline at Comment 1.

20             Coriolant contends that he should not be

21   assigned a role enhancement as an organizer, leader, manager or

22   supervisor because he was the only participant in the offense.

23   He contends that Dominque Walker was not involved in any real

24   way and that R.V., that is Rose, was a victim rather than a

25   participant.  He also contends that even if Rose's customers

1  were participants, they were never supervised or controlled by

2  anyone.

3          As the government notes, however, the testimony

4  at trial showed that Coriolant organized, managed, led or

5  supervised several participants in charged offenses.  At a

6  minimum, the evidence showed that he enlisted Dominque Walker

7  and Miguel Morancy to assist him in the trafficking of Rose on

8  several occasions.

9          His participation in the recruitment and

10  supervision of accomplices in the trafficking of Rose is

11  sufficient to warrant application of the enhancement.

12  Accordingly, the objection is overruled.

13          The defendant's objection No. 7 has to do with

14  the obstruction enhancement, paragraphs 54, 62, 70, 78, 86 and

15  94.

16          The PSR applied a two-level enhancement for

17  obstruction of justice for the following reason:

18          According to the government, a few days before

19  trial, R.V. informed Case Agent Jennifer Terry that the

20  defendant had contacted her, by way of Facebook messaging, in

21  attempt to have R.V. create lies about the defendant's role in

22  the offense.

23          According to the government, the defendant was

24  essentially concocting a plan to have R.V. give testimony that

25  she was a prostitute before she and the defendant met, and that

1  he did not know she was a minor.  According to the government,

2  Agent Terry gave testimony at trial to this effect.  The trial

3  testimony was not made available.  Nevertheless, based on

4  conversations with both the government and the case agent,

5  there's sufficient basis to support a finding that the

6  defendant attempted to suborn perjury through R.V.

7          Coriolant objects to the two-level enhancement

8  on the grounds that he did not attempt to suborn perjury and

9  that no evidence had been presented to support such a finding.

10 Coriolant argues that R.V. steadfastly denied at trial that any

11 such attempt occurred.  He also contends that he could not have

12 attempted to message her by way of Facebook because he was in

13 custody and had no access to the Internet.

14          Finally, Coriolant argues that even if he

15 attempted to influence R.V.'s testimony, it would not have

16 related to a material fact because her experience as a

17 prostitute prior to meeting him and his knowledge of her age

18 were immaterial to the elements of the offenses.

19          The government responds that on

20 cross-examination R.V. conveniently could not remember telling

21 Agent Terry that Coriolant had encouraged her to commit perjury

22 two days earlier.  The government argues that Agent Terry took

23 the stand and was able to fill in the holes by providing a

24 detailed account of Coriolant's attempt to suborn perjury.

25          The government contends that Agent Terry

1   testified that Coriolant hoped R.V. would post an apology on

2   his Facebook page stating that he was unaware of her

3   prostitution activities and did not know she was a minor.

4           The government contends that Coriolant also told

5   R.V. that it was imperative for her to lie for him since she

6   would only face three years for lying, whereas he was facing

7   life in prison.

8           The government argues that such attempts to

9   suborn perjury related to the material facts that, if believed,

10  would have undermined several of the elements necessary for him

11  to be convicted.

12          The U.S. Sentencing Guidelines authorize an

13  enhancement for obstruction of justice when:

14          One, the defendant willfully obstructed or

15  impeded, or attempted to obstruct or impede, the administration

16  of justice with respect to the investigation, prosecution or

17  sentencing of the instant offense or conviction;

18          And two, the obstructive conduct related to, A,

19  the defendant's offense of conviction and any relevant conduct;

20  or, B, a closely related offense.

21          That's U.S. Sentencing Guideline 3C1.1.

22          The Comments to the sentencing guideline explain

23  that this enhancement may be warranted when the defendant

24  commits, suborns, or attempts to suborn perjury.

25          That's the same Sentencing Guideline section,

1  Comment 5.

2  　　　　In order to apply an enhancement for obstruction

3  of justice, the Court must find evidence supporting the

4  enhancement by a preponderance of the evidence.

5  　　　　That's *U.S. versus Anderson*, 560 F.3d 275, 283

6  (Fifth Circuit, 2009.)

7  　　　　In *United States versus Anderson*, 560 F.3d 275,

8  283, the U.S. Court of Appeals for the Fifth Circuit upheld the

9  application of this enhancement in a similar case involving a

10  defendant convicted of sex trafficking of children.

11  　　　　The defendant recruited minor females to work

12  for him as prostitutes.  They gave him the money they earned

13  and he paid for their hotel rooms, cell phones, clothes and

14  food.  The District Court found that the defendant had

15  communicated from jail in a letter to one his minor victims

16  seeking her help and stated, "You need to be trying to help me,

17  to help you, to help us."

18  　　　　The Fifth Circuit held that applying the

19  two-level enhancement for obstruction of justice in that

20  circumstance was not clearly erroneous because the letter

21  reasonably could be read as an attempt to influence the

22  victim's testimony.

23  　　　　Based on the evidence presented at trial,

24  including the testimony of Rose and Agent Terry, this Court

25  finds by a preponderance of the evidence that Coriolant

1  similarly attempted to suborn perjury in a manner that warrants

2  application of the enhancement for obstruction of justice.

3  Accordingly, the objection's overruled.

4            The defendant's objection No. 8 has to do with

5  the undue influence enhancement at paragraphs 49, 57, 65, 73,

6  81 and 89.

7            Coriolant objects to the two-level enhancement

8  applied in the PSR for unduly influencing a minor.  The U.S.

9  Sentencing Guidelines authorize this enhancement when:

10           "A, the offense involved a knowing

11  misrepresentation of a participant's identity to persuade,

12  induce, entice, coerce, or facilitate the travel of, a minor to

13  engage in prohibited sexual conduct; or, B, a participant

14  otherwise unduly influenced a minor to engage in prohibited

15  sexual conduct."

16           That's U.S. Sentencing Guideline 2G1.3(b)(2).

17           The commentary suggests that:

18           "The court should closely consider the facts of

19  the case to determine whether a participant's influence over

20  the minor compromised the voluntariness of the minor's

21  behavior."  Same section at Comment 3(B).

22           The commentary further provides that:

23           "A case in which a participant is at least ten

24  years older than the minor, there shall be a rebuttable

25  presumption that the enhancement for undue influence applies.

1    In such a case, some degree of undue influence can be presumed

2    because of the substantial difference in age between the

3    participant and the minor."

4                Because Coriolant was at least ten years older

5    than R.V., the presumption of undue influence applies in this

6    case.

7                Coriolant contends that the enhancement is not

8    warranted because R.V. was a willing participant in

9    prostitution before she met him and there's no indication that

10   force or violence was used.

11               Coriolant argues that R.V. testified that she

12   was not supplied with drugs or alcohol to make her more willing

13   to engage in sexual activity, that Coriolant was incarcerated

14   in another state at the time of the offense, and that R.V. ran

15   away from home to rejoin him.  Coriolant argues that these

16   facts suggest that his conduct did not compromise the

17   voluntariness of R.V.'s behavior.  See U.S. Sentencing

18   Guideline 2G1.3(b)(2), Comment 3(B).

19               In *U.S. versus Anderson*, 560 F.3d, 275, 283

20   (Fifth Circuit, 2009), the Fifth Circuit rejected similar

21   objections to the application of this enhancement.  The court

22   remarked that the defendant's insistence that the victims were

23   engaging in prostitution before they associated with him

24   overlooked other evidence of his influence and could not

25   overcome the presumption of undue influence.

1    The evidence in this case similarly shows that

2  Coriolant unduly influenced R.V.  As the government notes, the

3  evidence at trial showed that Coriolant manipulated Rose by

4  providing her with drugs and alcohol, vacillating between

5  lauding and demeaning her, and even scolding that he would

6  "hang her ass when it come to his mother fucker [sic] freedom."

7    The government's expert also testified that

8  Coriolant's conduct was consistent with the methods used by

9  pimps to maintain control and influence over "a stable of

10  girls."

11    The Court agrees with the government that the

12  fact that R.V. did not, and still does not, see herself as a

13  victim is further evidence of the extent of the defendant's

14  influence.  Accordingly, the objection is overruled because, as

15  in *Anderson*, the PSR's conclusion of undue influence is both

16  presumed and supported by the evidence.

17    Coriolant also contends there is a question of

18  double counting associated with applying the presumption of

19  undue influence over a minor ten years younger than the

20  defendant and also finding that the offense involved

21  constructive force based on her status as a minor.  Coriolant

22  cites no authority in support of his argument that double

23  counting occurs when the adult/minor distinction is used for

24  both the presumption of undue influence enhancement and also

25  the career offender determination.

1          The Fifth Circuit has held that a court may
2   enhance a defendant's sentence under more than one guideline
3   section or subsection even though the two enhancements are for
4   essentially the same conduct.  See *United States versus Rocha*,
5   916 F.2d 219, 244 (Fifth Circuit, 1990.)
6          "Only if the guideline in question expressly
7   forbids double counting, would such double counting be
8   impermissible.  See *United States versus Dison*, 573 F.3d 204,
9   208 (Fifth Circuit, 2009.)  Because there is no such express
10  prohibition in this case, the objection is overruled.
11         The defendant's objection No. 9 has to do with
12  the commercial sex act enhancement, paragraph 91.  Coriolant
13  argues that the two-level enhancement for commercial sex acts
14  should not apply because it would constitute double counting
15  with respect to his conviction under 18, U.S.C., Section 1591.
16         The Fifth Circuit rejected an analogous argument
17  in *U.S. versus Anderson*, cited previously, in which it upheld
18  the commercial sex act enhancement with respect to a conviction
19  under 18, U.S.C., Section 1591.
20         Moreover, a high court may enhance a defendant's
21  sentence under more than one section or subsection, even though
22  the two enhancements are for essentially the same conduct.  See
23  *United States versus Rocha* at 244, cited previously.
24         Only if the guideline in question expressly
25  forbids double counting, would such double counting be

1    impermissible.  Again, *U.S. versus Dison*, cited previously.

2    Because there's no such express prohibition in this case, the

3    objection is overruled.

4              Now, objections No. 10 and 12 have to do with

5    the offense level calculation.

6              Because the revised PSR properly applied the

7    foregoing sentencing enhancements, his objection to the offense

8    level calculations are overruled.

9              Objection No. 11 has to do with the career

10   offender determination, paragraph 106.

11             Coriolant challenges the PSR's determination

12   that he's a career offender.  The U.S. Sentencing Guidelines

13   provide a defendant is a career offender if:

14             One, the defendant was at least 18 years at the

15   time the defendant committed the instant offense of conviction;

16             Two, the instant offense of conviction is a

17   felony, that's either a crime of violence or a controlled

18   substance offense;

19             And three, the defendant has at least two prior

20   felony convictions of either a crime of violence or a

21   controlled substance offense.

22             U.S. Sentencing Guideline 4B1.1(a).

23             The Guidelines define the term "crime of

24   violence" as follows:

25             "The term 'crime of violence' means any offense

1    under federal or state law punishable by imprisonment for a
2    term exceeding one year, that:
3               "One, has an element the use, attempted use, or
4    threatened use of physical force against the person of another;
5               "Or two, is burglary of a dwelling, arson, or
6    extortion, involves use of explosives, or otherwise involves
7    conduct that presents a serious potential risk of physical
8    injury to another."
9               That's U.S. Sentencing Guideline 4B1.2(a).
10              There's no dispute that Coriolant was 18 years
11    old at the time of the offense or that he has at least two
12    prior felony convictions that are controlled substance
13    offenses.  However, he argues that probation incorrectly
14    categorized the instant offense of conviction as a crime of
15    violence.  He argues that R.V. was almost an adult when she met
16    him, that she was a willing participant in prostitution
17    activities before and after she met him, and that her sexual
18    activity was consensual.
19              Under these circumstances, he contends that his
20    offense should not be considered a crime of violence and, as a
21    result, he does not qualify as a career offender under the
22    guidelines.
23              As the government notes, however, the Fifth
24    Circuit categorically rejected this argument in *United States*
25    *versus Battley*, 234 F.3d 28 (Fifth Circuit, September 11,

1   2000), which is an unpublished opinion.

2              In that case, the Fifth Circuit held that the

3   defendant's prior state conviction for enticing a person into

4   prostitution was a crime of violence because the defendant had

5   undoubtedly exposed his two minor step-daughters to a serious

6   risk of physical injury when he enticed them into prostitution.

7              In support of that conclusion, the Fifth Circuit

8   cited the well-documented perils of prostitution include

9   contracting sexually transmitted diseases, suffering physical

10  abuse, rape, and murder by clients, and a wide variety of other

11  physiological harms.  That reason is equally applicable to

12  defendant's convictions in this case and it forecloses his

13  argument the instant offense was not a crime of violence.

14             The Court also notes that the career offender

15  designation does not affect the calculation of his offense

16  level.

17             As the Court will explain, his offense level

18  before taking into account the career offender designation is a

19  level 44, which is greater than the offense level established

20  in the Guidelines table for a career offender convicted of an

21  offense carrying a maximum statutory sentence of life, which is

22  a level 37.  See U.S. Sentencing Guidelines, Section 4B1.1(b).

23             It also does not affect his criminal history

24  score, category VI, even without taking into account a career

25  offender designation.  Accordingly, the objection's overruled.

1          His objection No. 13 has to do with the criminal

2     history calculation, paragraphs 127 through 129 and 177.

3          He contends his high criminal history score,

4     which is 20, substantially overrepresents the seriousness of

5     his criminal history.  He contends his criminal history score

6     is the product of minor violations, such as driving without a

7     license and simple possession of marijuana.  He suggests this

8     provides the Court with a ground for applying a downward

9     variance or a departure.

10          The government responds that his criminal

11     history score adequately represents his criminal history.  The

12     government also notes that his criminal history score does not

13     take into account his numerous other arrests, and that a

14     colorable argument exists that it substantially underrepresents

15     the seriousness of his criminal history.  The government

16     objects to the granting of any departure or variance in this

17     case.

18          To the extent he requests a downward departure

19     on the ground that his criminal history score substantially

20     overrepresents the seriousness of his criminal history, the

21     Court notes that even if a downward departure was warranted on

22     such grounds, the U.S. Sentencing Guidelines provide that:

23          "The extent of a downward departure under this

24     subsection for a career offender within the meaning of Section

25     4B1.1 may not exceed one criminal history category."  That's

1   U.S. Sentencing Guideline 4A1.3(b)(3)(A).

2                 Because he qualifies as a career offender with a

3   criminal history category of VI, the Court may not depart by

4   assigning a criminal history score below category V.  See the

5   same section.

6                 As I will explain in a moment, the offense level

7   in this case is 44.  With an offense level of 44, his guideline

8   range would be life regardless of whether his criminal history

9   score was a category VI or a category V.  Notwithstanding, his

10  request for a downward departure due to a substantially

11  overrepresented criminal history score is denied.

12                To the extent you request a downward variance,

13  I'll take that into account when I review the sentencing

14  factors of Section 3553(a) and fashion an appropriate sentence

15  in this case.

16                Now, he was convicted on four counts as charged

17  in the superseding indictment.  Based on the provisions set

18  forth in U.S. Sentencing Guideline Section 1B1.2(d), the

19  revised PSR tends to treat the conspiracy charged in Count 1 as

20  if Coriolant had been convicted on a separate count of

21  conspiracy for each offense the defendant conspired to commit.

22  U.S. Sentencing Guideline Section 1B1.2(d).

23                Because the revised PSR concludes that Coriolant

24  conspired to commit an offense on April 2nd, 2010, April 5th,

25  2010, April 9th, 2010, April 10th, 2010, and April 11th, 2010,

1  the revised PSR treats him as having been convicted of five

2  pseudo counts in addition to the offenses charged in Counts 2,

3  3 and 4.

4            Although the revised PSR's decision to treat

5  Count 1 as five pseudo counts is arguably supported by

6  Application Note 3 to Section 1B1.2(d), the Court finds that

7  under the rationale of *United States versus Hersh*, 297 F.3d

8  1233 (Eleventh Circuit, 2002), the conspiracy charged in

9  Count 1 is a single-act conspiracy that should not be divided

10  into pseudo counts.

11            However, the Court agrees with the government

12  that the four counts resulting in a conviction should be

13  divided into two separate groups.

14            The first group includes the conspiracy charged

15  in Count 1 and the substantive offenses charged in Count 2 and

16  Count 3.  These offenses involve substantially the same harm

17  because they're based on the same acts and transactions

18  involving the same victim and they are connected by a common

19  criminal objective or constituting part of a common scheme or

20  plan.  See U.S. Sentencing Guideline, 3D1.2(a) and (b).  See

21  also U.S. Sentencing Guideline 3D1.2, Comment 8, explaining

22  that a conviction for conspiracy and a conviction on the

23  substantive offense should be grouped together under 3D1.2(b).

24            Count 4 should be treated as a separate instance

25  of the same victimization that resulted in separate harm.  See

 1  U.S. Sentencing Guideline 3D1.2, Comment 4 and Example 5, where
 2  it says:  "The defendant is convicted of two counts of rape for
 3  raping the same person on different days.  The counts are not
 4  to be grouped together."
 5              The offense level applicable to the group with
 6  the highest offense level is a level 42.  That should be
 7  increased by two levels because there are two units; that is
 8  groups that are equally serious or from 1 to 4 levels less
 9  serious.  That results in a total combined offense level of 44
10  rather than 47 as set forth in the revised PSR.
11              The offense level is 44, the criminal history is
12  category VI, and the guideline range is life.
13              All right.  That's the Court's disposition of
14  the objections.
15              Is there anything that you would like to say on
16  behalf of your client prior to sentencing?
17          **MR. DOSKEY:**  Yes, Your Honor.  I know that we're
18  going to take dramatically different positions on this, but I'm
19  going to go ahead and say it nonetheless.
20          **THE COURT:**  Yes, sir.
21          **MR. DOSKEY:**  I only hope that you would attribute
22  any -- anything that I say, actually, to myself rather than
23  against my client.  But I think that the government's
24  sentencing memorandum, at least as far as I'm concerned, the
25  very last sentence in their sentencing memorandum reflects the

1    misconception with which it both began and now ends this case.

2                    The final sentence in their sentencing

3    memorandum asks you to recommend to the BOP, the Bureau of

4    Prisons, that Mr. Coriolant not be incarcerated in the state of

5    Florida because the victim will have access to him.  I think

6    there's a fundamental misconception we attempt in some way to

7    put ourselves as parents for this young woman, no longer a

8    young girl, but a young woman.  This is not the case.

9                    The common supposition is that these cases

10   involve girls who are abducted, kidnapped, forced and beaten

11   and raped.  I understand that we heard an expert talk about a

12   different type of pimp, too.

13                   The article in this week's *Times-Picayune* again

14   talked about a woman, a 53-year-old, who had escaped from a

15   life of prostitution where she talked about having been

16   kidnapped and raped at age 12, of seeing girls who were chained

17   to beds, of seeing girls who were burnt with cigarettes, and

18   she, herself, had been stabbed when trying to escape from that

19   life.  That's, in fact, the "gorilla pimp," which is what I

20   think is the common supposition.

21                   That is, in fact, what Mr. Morancy, one of the

22   government's witnesses was, one of the people who testified.

23   In fact, I think even the Court would recognize possibly lied

24   to some extent about Mr. Coriolant, with the business about

25   always calling him "Pimp Haiti," and nobody else had ever heard

1 | him call him that.

2 |        But, regardless of that, Your Honor, you had the

3 | chance to see the victim, who I won't name, because there's no

4 | reason for her name to go out again on this record.  But the

5 | victim is now a -- I think she's either 19 or 20.  You saw a

6 | cool, calm, composed young woman.  A woman who has not only

7 | caught up to her age group peers in schooling, but is actually

8 | set to graduate from college ahead of them.

9 |        You saw a woman who had gone through the

10 | rehabilitation process, who now counsels girls who are trying

11 | to get out of prostitution; and, in fact, has been fostered by

12 | parents who run one of those very same programs.

13 |        She was adamant when she came in here, not only

14 | that had she engaged in this life before, but she was not

15 | forced into it.  That in no way minimizes what my client did.

16 | Because at the very least, my client was the adult in this

17 | relationship, he knew that she was underage, and he should have

18 | said, "No, I am not going to" -- "not only am I not going to

19 | just sit back and watch," but he should not have ever helped

20 | her go forward in her enterprise, if you want to categorize it

21 | as her enterprise.

22 |        But what we've got to distinguish is between

23 | those people who are, like Mr. Morancy, who has now gotten a

24 | sentence of 19 years, who, by his own admission, has stabbed

25 | women, has kidnapped the children of his prostitutes, has burnt

1    them with cigarettes, has broken their arm.  That was in his
2    own factual basis.
3              Inherent a 19-year sentence, simply by
4    testifying against Mr. Coriolant, despite the fact that I think
5    nobody would ever contend that he was a nicer guy, should we
6    use that term, than Mr. Coriolant.  Somewhere, Judge, I think
7    in fashioning a sentence, there's got to be a sense of
8    proportionality.
9              I normally stand in front of courts or in front
10   of jurors asking them to spare the lives of my clients who have
11   been charged with first degree murder.  And there's been many a
12   person I've represented who has been charged with -- one, two,
13   three, four -- even as many as eight murders that I've gone --
14   and I've gotten for them lesser sentences now than the
15   guidelines recommend for Mr. Coriolant.
16             So while I am not contending -- these claims,
17   indeed, far, far from that, Your Honor, in this case, we also
18   don't have that situation, which is ordinarily contemplated in
19   these cases, either by the masses or by the government.
20             When the government asked that she be in some
21   fashion, by further probations be being placed on the
22   Mr. Coriolant by his being removed and placed far away from
23   where his mother is dying of cancer in Florida, they are, in
24   fact, taking that paternalistic attitude that, "No matter how
25   much you educate yourself, Ms. Victim, no matter how old you

 1  get, no matter how many other experiences you go through, we
 2  will always tell you that you are a victim, and we will treat
 3  you as such, no matter how intelligent, no matter how rational
 4  you appear to be."
 5              And I ask Your Honor not to indulge in the same
 6  thing, and again to adopt a wider view of what is proportionate
 7  in this case and, therefore, to take a variance from that
 8  recommended sentence of life in the guidelines, as you're
 9  allowed to do, and to impose a lesser sentence on
10  Mr. Coriolant, Your Honor.
11              THE COURT:  Thank you, Mr. Doskey.
12              Mr. Coriolant, do you want to say anything?
13              THE DEFENDANT:  Just that I'm speechless, really.
14  But I, you know --
15              THE COURT:  Well, you say you're speechless, does
16  that mean you don't want to say anything?
17              THE DEFENDANT:  No.  I'd like to apologize for, you
18  know, any time being wasted with everybody that's dealing with
19  this case.
20              THE COURT:  Is that what you're apologizing for, the
21  fact that you wasted everybody's time?  Is that what you're
22  sorry about?
23              THE DEFENDANT:  Not wasting anybody's time, but,
24  like, going through this phase, like, trying to figure out,
25  like, what's going on.  Because by me working -- working on

1  this case trying to, like, find out what's really going on, I

2  ain't really had a fair share of, like, going through the

3  documents, the case laws and --

4          **THE COURT:**  That's nonsense.  You had the opportunity

5  to review all the discovery prior to trial.  We made sure that

6  happened through the efforts of the local sheriff and the U.S.

7  Marshal Service; and, of course, your counsel as well received

8  all the documents necessary to prepare for this case.  That's a

9  bunch of nonsense.

10          What else?

11          **THE DEFENDANT:**  Like what you mean nonsense?

12          **THE COURT:**  That you didn't have access to materials

13  prior to trial that were used by the government that were the

14  government's evidence in the case.  You did.  Hours of it.

15          **THE DEFENDANT:**  No, I'm talking about, like, as far

16  as time.  Like, as far as time.  I didn't listen to all of the

17  phone calls, not even the ones that they provided in trial.  I

18  didn't get a chance to listen to them.

19          **THE COURT:**  Every request that you made to be able to

20  view the materials prior to trial was granted and there was no

21  statement whatsoever by you or your counsel that you didn't

22  have an opportunity to review all the documents that were

23  provided by the government prior to trial.

24          But tell me what you're sorry about.  I'm trying

25  to figure this out.

1    **THE DEFENDANT:**  Like, taking everybody through,
2    like -- like, the letter from my mom, my sister.  I even got a
3    letter from Rose and her mom.  And everybody feel like it's
4    their fault that I'm in here.  But I'm telling them, no, it's
5    all our faults.
6            **THE COURT:**  So really it's Rose's fault, too?
7            **THE DEFENDANT:**  Huh?
8            **THE COURT:**  It's Rose's fault, it's Rose's mom's
9    fault, it's your mom's fault?  It's those person's fault also?
10   Is that what you're telling me?
11           **THE DEFENDANT:**  Not necessarily.  Because --
12           **THE COURT:**  What did Rose's mom do?
13           **THE DEFENDANT:**  What Rose and Rose's mom, like, how
14   she feel, like, it's her fault because at the time that I found
15   out Rose's age, I brought her back to her mom.  And her mom
16   called me back and was, like, "Come get my daughter because she
17   said she's going to kill herself if you don't come get her."
18           **THE COURT:**  When you found Rose's age out, you
19   continued to have her engage in prostitution, you continued to
20   pimp her out.
21           **THE DEFENDANT:**  No.  I took her to her mom, and then
22   her mom's the one that called me back and saying that, "Come
23   get her.  If you don't come get her, she's saying she's going
24   to kill herself."
25           **MR. DOSKEY:**  Your Honor, may I speak to my client for

1  one second?

2         THE COURT:  Yes.

3                    (OFF THE RECORD)

4         THE COURT:  After you sent Rose's mom bus fare, or

5  whatever you sent her -- I can't remember exactly what the

6  testimony was -- she continued to engage in prostitution with

7  you acting as her pimp.  That was the testimony that I heard

8  and, quite frankly, believe.

9         THE DEFENDANT:  Come again?

10        THE COURT:  First of all, we're not out in the

11 street, so don't tell me "Come again."

12        THE DEFENDANT:  No, I'm saying I --

13        THE COURT:  You can say "Excuse me," or, "Would you

14 repeat that" --

15        THE DEFENDANT:  I'm hard of hearing.  That's what I'm

16 telling you.

17        THE COURT:  -- but do not tell me "Come again."

18            So my point was this:  Once Rose's mom had been

19 provided with a bus ticket, or whatever you did, for her to see

20 Rose -- if I remember correctly, I think that was the

21 testimony.  Is that correct?

22        MR. GINSBERG:  Your Honor, the testimony was that he

23 had brought money to a person, had money wired to Rose's mother

24 so, I think, that they could get a rental car.

25        THE COURT:  All right.  Well, once you arranged for

1   that transportation, once that was over with, she continued to
2   engage in prostitution with you as her pimp.  So I'm trying to
3   figure out what you're sorry about.  Are you sorry about
4   anything that you did?
5              THE DEFENDANT:  Yes, Your Honor.
6              THE COURT:  What are you sorry about that you did?
7              THE DEFENDANT:  About everything.
8              THE COURT:  What does that mean?
9              THE DEFENDANT:  Like, as far as my role in what's
10  going on in this case.
11             THE COURT:  What was your role?
12             THE DEFENDANT:  Being with her.
13             THE COURT:  That was your role, being with her?
14             THE DEFENDANT:  Yeah.
15             THE COURT:  You don't think you did anything wrong?
16             THE DEFENDANT:  You know, she --
17             THE COURT:  Do you accept any responsibility for what
18  you did?
19             THE DEFENDANT:  Yeah.
20             THE COURT:  Do you accept responsibility for pimping
21  her out?
22             THE DEFENDANT:  I wasn't pimping her out, Your Honor.
23             THE COURT:  Okay.  So now I know that you have not
24  accepted responsibility for what you did.  Now that you've said
25  that, I now understand that you've not accepted responsibility

1   for what you've done.

2              What else do you want to tell me?

3         **THE DEFENDANT:**  That's it.

4         **THE COURT:**  Okay.

5         **MR. GINSBERG:**  Your Honor?

6         **THE COURT:**  Mr. Doskey, is there anything else you

7   want to say based on those representations by your client?

8         **MR. DOSKEY:**  Actually, yes, Your Honor.  And that

9   would be that I would still continue to ask for that variance

10  and argue there ought to be a sense of proportionality.

11  Whether or not you, or I, or anyone in this courtroom believes

12  he has, in fact, accepted responsibility, I still think that

13  there should be a variance.

14        **THE COURT:**  All right.  For him to say that he didn't

15  pimp her out, I mean, he must have been sitting in a different

16  courtroom when we were trying the case; and it's not just a

17  matter of him being hard of hearing, I can tell you.

18             Mr. Ginsberg, anything you want to say?

19        **MR. GINSBERG:**  Yes, Your Honor, I'd like to address

20  two points.

21             First, with respect to the guideline sentence,

22  Your Honor, the government would submit that a Guideline

23  sentence is appropriate.  Under case law, a Guideline sentence

24  is expected to be reasonable.  And the Eleventh Circuit has

25  gone so far as to say that especially in the context of child

1   sex cases, Guideline sentences are appropriate and reasonable.

2                    Now, in this case that would mean for

3   Mr. Coriolant the rest of his life in jail.  Now, I recognize

4   it's a high sentence, but it is the recommended Guideline

5   sentence; and it is that way not because of not one or two, but

6   a series of choices, a lengthy series of choices that

7   Mr. Coriolant made.  He made them with respect to every act

8   that led to one of his arrests and convictions that raised his

9   criminal history, and also the decisions he made that led to

10  the offense conduct.

11                   Now, as the Eleventh Circuit has noted and also

12  the Supreme Court has noted that child sex cases are among the

13  most egregious and despicable of societal and criminal

14  offenses, and at trial, Judge, you saw that.  You saw proof of

15  not just what he made the victim endure in 2009 and 2010, which

16  he did, but also what his actions continue to do to her.

17                   You heard him -- you saw in the PSR where he

18  represented that he is still in a relationship with her.  He

19  just said today that he's receiving letters from her.  It's

20  clear that that manipulation, the spell that she's under,

21  Judge, still continues.

22                   Moreover, I recently learned that she was unable

23  to go back to school after testifying at trial, the

24  psychological stress of it all, and him calling her to testify

25  was apparently too much for her.

1           So for those reasons, Judge -- and I can have

2   Agent Terry testify, if you think that's appropriate.  Now,

3   that's the first point I wanted to raise.

4           The second point has to do with Mr. Doskey's

5   request for a variance on the basis that there's somehow some

6   disparate sentence -- disparate treatment between the sentence

7   Mr. Morancy received and the one that Mr. Coriolant is looking

8   at under the guidelines.

9           First, as the Court well knows -- and I'm not in

10  any way trying to minimize what Mr. Morancy did and was

11  convicted of.  It was heinous and horrible.  But he pleaded

12  guilty and saved three points.  He saved government resources,

13  and he saved victims from having to go through what Rose went

14  through when Mr. Coriolant called her to testify.

15          He also cooperated and provided valuable

16  cooperation to the government that helped affect and lessen his

17  sentence.  His criminal history was substantially less.  I

18  believe he was a criminal history category III, much less than

19  Mr. Coriolant.

20          Most importantly, Judge, I would disagree with

21  the fundamental premise that somehow what Mr. Morancy did --

22  because this isn't a trial -- this isn't a case about

23  Mr. Morancy -- but I would disagree with the premise that

24  somehow what he did was worse because he was a "gorilla pimp"

25  as opposed to being what Mr. Coriolant is, which is a "finesse

1   pimp."

2   Your Honor, it's easier for victims to walk away

3   from gorilla pimps because they know fundamentally what's

4   happening to them is wrong.  As one said, "I don't like to

5   think about the ones" -- "the pimps that didn't hurt me."  The

6   ones that do hurt you, they're easy to walk away from and get

7   away from.  But, obviously, Rose isn't able to do that; and

8   she's not able to do that because of what Mr. Coriolant has put

9   her through, and continues to put her through.  And that's been

10  clear in phone call after phone call.

11  Your Honor, I would respectfully request that

12  the Court reject and deny any request for a variance on the

13  basis of some sort of disparate sentence request, that the

14  Court impose a Guideline sentence of life and recommend that

15  the BOP house Mr. Coriolant in someplace outside the state of

16  Florida.

17  **THE COURT:**  All right.

18  **(OFF THE RECORD)**

19  **THE COURT:**  All right.  Let's go through parts of

20  this PSI, which serves as the basis of -- part of the basis of

21  my decision.

22  We begin with your juvenile adjudications.  You

23  began your criminal history of adjudication convictions at age

24  11, assault and/or battery.  Then at age 12, aggravated assault

25  and/or battery.  At age 13, burglary, resisting arrest without

1  violence.  Age 15, disorderly conduct and another misdemeanor.

2  Age 15, assault and/or battery.  Age 16, grand theft of a motor

3  vehicle.

4          Then when you become an adult, and without

5  wasting too much time, at age 18, possession of marijuana in

6  excess of 20 grams.  You were placed on probation; your

7  probation was revoked.

8          At age 20, the sale of cocaine; placed on

9  probation; of course, the probation was revoked.  At age

10  21, possession of marijuana with intent to sell.  You pled

11  guilty.  You received a sentence of 17.175 months of

12  imprisonment.  Age 23, driving while license revoked, habitual

13  possession of marijuana less than 20 grams, a short period of

14  imprisonment.

15          Age 24, driving while license suspended,

16  habitual traffic offender; again, probation.  Age 24, resisting

17  an officer with violence; probation; probation revoked.  At age

18  24, driving while license suspended, habitual offender; 20 days

19  imprisonment and probation; probation revoked.

20          Age 25, driving while license suspended,

21  habitual offender; 135 days imprisonment.  Age 27, possession

22  of cannabis and possession of drug paraphernalia.  You pled

23  nolo contendere, only 37 days of imprisonment.

24          Age 27, driving while license suspended,

25  habitual offender; probation with 30 days imprisonment, a

1  special condition; probation revoked.  Age 27, possession of
2  20 grams or less of marijuana and possession of drug
3  paraphernalia.  You pled no contest; probation with 35 days
4  imprisonment with special conditions; probation revoked.  Age
5  27, driving while license suspended, habitual offender; pled
6  nolo; six months imprisonment.
7              And that's your criminal history.
8              The most you've served, it looks like, is 17
9  months.  That's it.  Numerous probations revoked.  It's
10  apparent to the Court that you're not amenable to any type of
11  supervision.  You have a history of marijuana, ecstasy and pain
12  pill use.  You began smoking marijuana at age 13.  At about age
13  20, you began using ecstasy.  You reported taking pain pills.
14  You certainly have an issue with respect to substance abuse.
15              With respect to your employment record, you have
16  a limited history of gainful employment.  The only job you
17  recall having over the past 10 years was with a pipeline
18  company in West Palm Beach, Florida, on or about 2003.  You
19  couldn't recall the name of the company.
20              And for the past ten years, you told Probation
21  you obtained temporary employment, but did not recall with
22  whom.  You reported you sold weed or ecstasy to support
23  yourself.  And I think you received some money from an accident
24  claim.
25              I look at your background, and I was able to

1  hear the testimony that unfolded during the trial of your case
2  last year, and I have to tell you that the sanitized
3  description of the criminal conduct reflected on the grand jury
4  indictment did not adequately portray the magnitude of your
5  horrific conduct.
6           Rose may have testified that she was not a
7  victim, that apparently being your point of view as well, but
8  the Court, without any hesitation, rejects that position, as
9  did the 12 men and women who sat on the jury.
10           You preyed on Rose for commercial purposes; and
11  in doing so, you're exposed to be the sexual predator that you
12  really are.  You never really loved Rose, as that word is
13  understood by the rest you of us.  You were in love with what
14  she was able to financially provide you with.  She was a
15  commodity.  You had no job; she was your meal ticket.
16           You shared a bed with a child.  You had
17  intercourse with a child.  You provided a child with alcohol
18  and unlawful drugs in order to control her actions.  You
19  encouraged -- actually, no, you demanded that she have intimate
20  relationships with men whom she knew for no more than 30 to 60
21  minutes at a time.
22           You told and encouraged her to have anal sex
23  with faithless men for a price higher than that which she would
24  incur for vaginal intercourse.  You threatened a child with
25  physical harm, and you encouraged her to lie in a judicial

1   proceeding and obstruct justice.

2              It was not only Rose, because I heard the

3   testimony, you provided Selena Johnson to shadow a gorilla pimp

4   as if she was a piece of meat.  I'm confident that you knew

5   what her fate would be once you did that.  You stole the soul

6   of a 14-year-old.  14-year-old's should not be for sale.  You

7   had Rose believing there were no other options in life, other

8   than that offered by your depraved, your sick, and your

9   villanous conduct.  Rose should never have been your "bottom

10  bitch."

11             The evidence in the case reminds all of us of

12  the grim realities associated with child sex trafficking.

13  Having heard the chilling testimony in this case, I'm convinced

14  that nothing short of a severe sentence would be appropriate.

15  I intend to impose such a sentence today.

16             Now, I will say this:  The Guideline sentence is

17  life.  I note that the United States did not charge the offense

18  was committed by means of force, as set forth in the statue.

19  They used another section of the statute.  And a sentence of

20  480 months would exceed the longest term of imprisonment that

21  you served by more than 28 times.

22             So while I'm not minimizing your actions, I

23  believe the recommended sentence variance is more than

24  sufficient to satisfy the statutory sentencing objectives under

25  18, U.S.C., Section 3553, in particular, protecting the public,

1    especially children, from criminal crimes of the defendant.

2                    So pursuant to the Sentencing Reform Act of

3    1984, and considering the provisions found in 18, U.S.C.,

4    Section 3553, it's the judgment of this Court that you, Benson

5    Coriolant, be committed to the custody of the U.S. Bureau of

6    Prisons to be imprisoned for a term of 480 months.  The term

7    consists of 480 months as to each of Counts 1, 2 and 4, and 240

8    months as to Count 3, such terms to be served concurrently.

9                    The sentence imposed is a downward variance

10   pursuant to Section 3553(a).  It takes into account your career

11   offender status and your extensive criminal history.  It's

12   reasonable, promotes respect for the law, and provides just

13   punishment for the offense, and deters future criminal

14   activity.

15                    I find you're not able to pay a fine and no fine

16   shall be imposed.

17                    Upon release from imprisonment, you shall be

18   placed on supervised release for a term of life as to Counts 1,

19   2, 3 and 4, such terms to run concurrently.  Within 72 hours of

20   release from the custody of the Bureau of Prisons, you shall

21   report, in person, to the probation office in the district to

22   which you're released.

23                    While on supervised release, you shall not

24   commit any federal, state or local crimes and shall be

25   prohibited from possessing a firearm, ammunition, destructive

1  device, or any other dangerous weapon.  You shall not possess a
2  controlled substance.  You shall cooperate in the collection of
3  DNA, and shall comply with all the other standard conditions of
4  supervised release, including the following special conditions:
5             You shall not possess, or use for any purpose, a
6  computer or a television or other instruments of communication
7  equipped with online Internet or Worldwide Web access, or
8  access computers or other forms of wireless communication by
9  way of third parties.
10            The sex offender treatment condition.  You shall
11 comply with the sex offender registration notification
12 procedures, and the drug abuse treatment and/or testing
13 condition.
14            It's further ordered you pay the United States a
15 special assessment of $400.
16            You'll be remanded into the custody of the U.S.
17 Bureau of Prisons.  And I strongly recommend -- this will be
18 placed in the judgment -- I strongly recommend to the U.S.
19 Bureau of Prisons that you not be placed in the state of
20 Florida, or any institution in the state of Florida, as I think
21 that your victim in this case, Rose, needs more time to heal
22 and understand the depravity with which you treated her and be
23 able to move on to a productive life without you anywhere in
24 her life.
25            You have the right to appeal your conviction as

1  well as your sentence.  If you cannot afford the costs of an

2  appeal, including an attorney to represent you on appeal,

3  including the cost of a transcript and the filing fee, upon a

4  properly filed motion, I will consider that motion and you'll

5  be able to proceed, if I grant it, without paying any of those

6  costs.

7                    Do you understand that?

8            **THE DEFENDANT:**  (NODS HEAD.)

9            **THE COURT:**  All right.  Anything further?

10           **MR. GINSBERG:**  Your Honor, please note the

11  government's objection.

12           **THE COURT:**  All right.  He's remanded to the custody

13  of the U.S. Marshals.

14           **MR. DOSKEY:**  Thank you, Your Honor.

15           **MR. GINSBERG:**  The government would move to dismiss

16  the original indictment.

17           **THE COURT:**  Granted.

18           (WHEREUPON, the proceedings were concluded.)

19

20

21

22

23

24

25

1                                   *****

2                              **CERTIFICATE**

3          I, Jodi Simcox, RMR, FCRR, Official Court Reporter

4    for the United States District Court, Eastern District of

5    Louisiana, do hereby certify that the foregoing is a true and

6    correct transcript, to the best of my ability and

7    understanding, from the record of the proceedings in the

8    above-entitled and numbered matter.

9

10                        *s/Jodi Simcox, RMR, FCRR*
                          Jodi Simcox, RMR, FCRR
11                        Official Court Reporter